IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| JAMES SHEETS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 18-CV-3095-WJE |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

James Sheets, plaintiff, seeks judicial review[1] of a final administrative decision of the Commissioner of Social Security (Commissioner) denying his claim for disability insurance benefits under Title II of the Social Security Act (SSA), 42 U.S.C. §§ 401, *et seq*. Mr. Sheets contends the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that he was not disabled during the relevant period. For the reasons that follow, the Commissioner's decision will be affirmed.

### I. BACKGROUND

Mr. Sheets was born on September 28, 1966. On April 12, 2016, Mr. Sheets filed an application for disability insurance benefits. (AR 99). He originally alleged a disability onset date of September 25, 2015, stemming from high blood pressure, left hip pain, sleep problems, depression, short-term memory loss, anger issues, and bipolar disorder. (AR 194, 218). At the administrative hearing on November 2, 2017, Mr. Sheets and his counsel amended his alleged disability onset date to September 28, 2016, which was his 50th birthday. (AR 10, 28-29). The claim was denied on November 17, 2017. (AR 7-23). Thereafter, Mr. Sheets filed a Request for Review of Hearing Decision with the Appeals Council on January 4, 2018, which was denied on January 23, 2018. (AR 1-6). Thus, the decision of the Administrative Law Judge (ALJ) stands as the Commissioner's final decision.

---

[1] With the consent of the parties, this case was assigned to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(c).

**Disability Determination and the Burden of Proof**

A claimant seeking disability insurance benefits has the burden of establishing he or she suffers from a disability as defined by the SSA in 42 U.S.C. § 1382c(a)(3)(A). *Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995); *Gentry v. Astrue*, No. 07-03168-CV-S-REL-SSA, 2008 U.S. Dist. LEXIS 55511, at *4 (W.D. Mo. 2008) (citing *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998)). This requires demonstration of (1) a medically determinable impairment that has lasted or will likely last for a period of at least one year that (2) has rendered claimant unable to engage in any "substantial gainful activity" (3) because of the impairment. 42 U.S.C. § 1382c(a)(3)(A). Based on these criteria, the Social Security Administration has established a five-step, sequential evaluation process for appraising whether a claimant is disabled and benefit-eligible. 20 CFR §§ 404.1520(a) and 416.920(a); *see generally Stanton v. Comm'r, SSA*, 899 F.3d 555, 557 (8th Cir. 2018); *see also Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).

> The Commissioner must evaluate:
>
> (1) whether the claimant is presently engaged in a substantial gainful activity;
> (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities;
> (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations;
> (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and
> (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

*Frederick v. Berryhill*, 247 F. Supp. 3d 1014, 1019–21 (E.D. Mo. 2017) (citing *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003); *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007)).

At step one, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity" (SGA). 20 CFR §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 CFR § 404.1572(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 CFR § 404.1572(b). If the claimant is engaged in

SGA, then the claimant is not disabled. 20 CFR §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). If the claimant is not engaging in SGA, the analysis proceeds to the second step.

Next, at step two, the Commissioner must determine whether the claimant has a severe medically determinable impairment that significantly limits the claimant's physical or mental ability to perform basic work activities. *Dixon*, 353 F.3d at 605. An impairment or combination of impairments is not severe when evidence—medical or otherwise—establishes one or more slight abnormalities that would have only a minimal effect on an individual's ability to work. *Kirby*, 500 F.3d at 707; 20 CFR §§ 404.1521 and 416.921. If the claimant does not have one or more severe, medically-determinable impairments, the claimant is not disabled under the SSA.

If the claimant is found to be severely impaired, the analysis proceeds to the third step where the Commissioner must determine whether the claimant's impairment(s) meet or medically equal the severity criteria listed in 20 CFR Part 404, Subpart P, Appendix 1. 20 CFR §§ 404.1520(d), 404.1525, 404.1526. If the impairment(s) meet the criteria and duration requirement, the claimant is disabled. Otherwise, the analysis proceeds to the next step.

At step four, the Commissioner examines evidence provided by the claimant to assess the claimant's residual functional capacity (RFC). 20 CFR §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). RFC refers to a claimant's ability to perform physical and mental work activities on a sustained basis despite limitations from impairments. *Id.* At this stage of the analysis, the Commissioner is responsible for developing the claimant's complete medical history, arranging for consultative examinations, and assisting claimant with gathering other medical evidence. 20 CFR §§ 404.1545(a)(3) and 416.945(a)(3). If a claimant retains the RFC for work performed in the fifteen years prior to the onset of the alleged disability ("past relevant work"), then the claimant is not disabled. If the claimant is or does not have any past relevant work, the analysis proceeds to final step, and the burden shifts, thereafter requiring the Commissioner to disprove disability.

At step five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant is able to do any other work. Though the claimant continues to bear the burden of proving disability, once he or she adequately shows an inability to do past work, the Commissioner has the burden of proving the claimant retains the RFC to do *other* types of work. *Frederick*, 247 F. Supp. 3d at 1020. The Commissioner is then responsible for providing evidence that other work the claimant can perform exists in significant numbers in

the national economy. 20 CFR §§ 404.1512(g), 404.1560(c), 416.912(g) and 416.960(c). If the claimant is able to do other work, the claimant is not disabled. If the claimant is not able to do other work and meets the duration requirement, the claimant is disabled.

## The ALJ's Findings

The ALJ made the following findings:

1. Mr. Sheets meets the insured status requirements of the SSA through December 31, 2017.
2. Mr. Sheets has not engaged in substantial gainful activity since September 28, 2016, the alleged onset date. (20 CFR § 404.1571 *et seq.*).
3. Mr. Sheets has the following severe impairments: degenerative disc disease, status post ankle fracture, status post right wrist fracture, and status post plate removal of right wrist/reconstruction. (20 CFR § 404.1520(c)).
4. Mr. Sheets does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (20 CFR §§ 404.1520(d), 404.1525, and 404.1526).
5. Mr. Sheets has the residual functional capacity to perform light work as defined in 20 CFR § 404.1567(b) except can lift and carry 20 pounds occasionally and 10 pounds frequently; can stand or walk 6 hours a day, and sit 6 hours a day; can lift no more than 10 pounds with the dominant, right hand, but can lift 20 pounds with both hands; occasionally climb, balance, stoop, kneel, crouch, crawl; occasionally handle and finger with the upper right extremity; no more than occasional exposure to extreme temperatures, such as cold, or humidity, wetness or vibration; no exposure to hazardous conditions such as working around heights or dangerous moving machinery; and cannot climb ropes, ladders or scaffolds.
6. Mr. Sheets is unable to perform any past relevant work. (20 CFR § 404.1565).
7. Mr. Sheets was born on October 28, 1966 (sic) and was 49 years old (sic) on the alleged onset date, which is defined as an individual closely approaching advanced age. (20 CFR § 404.1563).
8. Mr. Sheets has at least a high school education and is able to communicate in English. (20 CFR § 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Mr. Sheets is "not disabled," whether or not Mr. Sheets has transferable job skills. (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
10. Considering Mr. Sheets' age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Mr. Sheets can perform. (20 CFR §§ 404.1569 and 404.1569(a)).
11. Mr. Sheets has not been under a disability, as defined in the SSA, since September 28, 2016, the date the application was filed. (20 CFR § 416.920(g)).

## II. STANDARD OF REVIEW

The Eighth Circuit requires the reviewing court to "determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole." *Baker v. Barnhart*, 457 F.3d 882, 892 (8th Cir. 2006). "Substantial evidence" is less than "a preponderance of the evidence," merely requiring that a reasonable person would find the evidence adequate to support the Commissioner's decision. *Id.*; *Cox v. Barnhart*, 345 F.3d 606, 608 (8th Cir. 2003). All evidence, whether it supports or contradicts the Commissioner's decision, should be examined to determine whether the existing evidence is substantial. *Baker*, 457 F.3d at 892.

When reviewing the record to determine if there is substantial evidence to support the administrative decision, the Court considers the educational background, work history, and present age of the claimant; subjective complaints of pain or other impairments; claimant's description of physical activities and capabilities; the medical opinions given by treating and examining physicians; the corroboration by third parties of claimant's impairments; and the testimony of a vocational expert when based upon proper hypothetical questions that fairly set forth the claimant's impairments. *McMillian v. Schweiker*, 697 F.2d 215, 221 (8th Cir. 1983).

"As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome or because we would have decided the case differently." *Baker*, 457 F.3d at 892; *Schouten v. Berryhill*, 685 F. App'x 500, 501 (8th Cir. 2017); *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015); *Wheeler v. Apfel*, 224 F.3d 891, 893-94 (8th Cir. 2000); *Nguyen v. Chater*, 75 F.3d 429, 431 (8th Cir. 1996).

## III. DISCUSSION

Mr. Sheets argues remand is proper because the ALJ erred by failing to support the RFC with substantial evidence of record. Specifically, he contends the ALJ failed to point to some medical evidence to support the conclusion that Mr. Sheets could perform light work and failed to properly weigh Sheets' testimony. As a result, Mr. Sheets alleges, the record lacks substantial evidence to support the ALJ's RFC determination. The Government has responded in opposition asserting that substantial evidence supports the ALJ's decision and therefore affirmance is proper. After a full review of the administrative record and consideration of the parties' pleadings and arguments made during oral argument that was held on December 11, 2018, the Court finds the ALJ's decision is supported by substantial evidence on the record as a whole and must be affirmed.[2]

An ALJ has the responsibility to develop an RFC based on all relevant evidence of record, including the claimant's subjective statements about his limitations and medical opinion evidence. *See Mabry v. Colvin*, 815 F.3d 386, 390 (8th Cir. 2015); *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007) ("[I]n evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively."); *see also* 20 C.F.R. § 404.1545; SSR 96-8p, 1996 WL 374184 (July 2, 1996). An ALJ should consider the claimant's allegations to assess the claimant's RFC and must give good reasons if he or she questions the claimant's allegations. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1983) (ALJ is "not free to accept or reject claimant's subjective complaints solely on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole."); 20 C.F.R. § 404.1529 (discussing the process for evaluating symptoms); SSR 16-3p (discussing the evaluation of symptoms).

Here, the ALJ found that the objective medical evidence was not consistent with the severity of pain, fatigue, and limitations that Mr. Sheets alleged. (AR 16). On June 3, 2016, before Mr. Sheets' onset date, he fractured his right fibula when he "rolled his foot off some brick pavers" while getting out of his car. (AR 475, 545). He had surgery and one month later x-rays revealed routine healing. (AR 16, 318-19). Mr. Sheets' doctor described the x-rays as "quite good." (AR 318). *See* SSR 16-3p (noting that "objective medical evidence is a useful indicator to help make

---

[2] Plaintiff's arguments in support of this appeal were carefully and fully considered. Any arguments that are not specifically discussed in this order have been considered and determined to be without merit.

6

reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities"). Mr. Sheets was "ambulating full weight bearing with no crutches." (AR 318). He reported no pain. (AR 318).

Similarly, on October 12, 2016, Mr. Sheets fractured his right wrist when he fell while walking into a pawn shop, and he later had reconstructive surgery. (AR 449-50, 463-68). More than one month later, Mr. Sheets reported no wrist pain and was progressing as expected. (AR 602-03). Within two months, Mr. Sheets was "doing well." (AR 356). He was healing appropriately, and the bridge plate was removed. (AR 356, 358, 376). He rated his wrist pain as a "one" on a ten-point scale. (AR 600). As the ALJ noted, by February 6, 2017, Mr. Sheets' grip strength was thirty pounds in the right hand and fifty-five pounds in the left hand. (AR 16, 597). Mr. Sheets said he was "highly satisfied" with his progress following wrist surgery. (AR 597). Although he lacked full range of motion in his wrists, his flexion and extension were still seventy-five and seventy degrees respectively. (AR 597). He had full strength in his hands, wrists, and forearms. (AR 597). His doctor even noted that he would not need therapy and could strengthen his hand and increase his range of motion on his own. (AR 597). The doctor also noted that Mr. Sheets could resume light activities and could decide on his own when to return to vigorous activities such as sports. (AR 597). "Impairments that are controllable or amenable to treatment do not support a finding of disability." *See Davidson v. Astrue*, 578 F.3d 838, 846 (8th Cir. 2009) (citation omitted).

Regarding Mr. Sheets' back pain, the ALJ noted that July 2016 x-rays of the lumbar spine were unremarkable. (AR 16, 326). Mr. Sheets described his back pain as "moderate." (AR 551, 557). Examinations revealed slightly diminished range of motion of the lumbar spine and slow and stiff gait when first standing up from a chair. (AR 16, 290, 297, 429). However, Mr. Sheets generally had normal gait. (AR 16, 555). He did not have muscle atrophy, muscle spasms, significant motor loss, reflex abnormalities, or serious gait disturbance. (AR 16, 290, 297, 305, 329, 342, 555, 560, 573).

The ALJ also noted that aside from Mr. Sheets' successful ankle and wrist surgeries, his treatment was generally conservative and consisted mostly of routine follow-up visits for pain management and general primary care. (AR 16, 289-315, 327-352, 551-595). Mr. Sheets needed no further surgery on his wrist or ankle, and he never had back surgery. (AR 16). He did not permanently use an assistive device for ambulation and used no other pain modalities. (AR 16).

Mr. Sheets argues that the ALJ never specified what treatment Mr. Sheets would have been

7

expected to attend. (Doc. 8 at 14). But, as shown above, the ALJ did cite examples of the type of treatment one would expect for someone with disabling impairments. Moreover, the ALJ's main point was that the mostly routine treatment Mr. Sheets did have was not reflective of disabling impairments (AR 17). *See* 20 CFR § 404.1529(c)(3)(v) (noting that one of the factors the Commissioner considers is the "treatment . . . you receive or have received for relief of your pain or other symptoms").

The ALJ also considered Mr. Sheets' testimony that he took only over-the-counter medication. (AR 16, 40-41). In assessing a claimant's subjective complaints, an ALJ considers "[t]he type, dosage, effectiveness, and side effects of any medication." *See* 20 CFR § 404.1529(c)(3)(iv). Mr. Sheets testified that he no longer took prescription pain medication because of financial problems and a lack of health insurance. (AR 16, 41). Mr. Sheets argues that, at the hearing, the ALJ should have asked him about his attempts to obtain low-cost or free treatment. (Doc. 8 at 14). Here, however, there is no evidence in the treatment notes that Mr. Sheets ever sought prescription drug assistance or similar resources. (AR 16). In fact, there is no evidence that Mr. Sheets sought any treatment whatsoever after February 2017. Under these facts, it was reasonable for the ALJ to conclude that Mr. Sheets no longer took prescription pain medication because his symptoms did not warrant it, not because he could not afford it.

In addition to the medical evidence, the ALJ also considered Mr. Sheets' activities, which were more extensive than one would expect for someone with disabling impairments. (AR 16-17). Pain management treatment notes repeatedly stated that Mr. Sheets lived by himself and was "independent." (AR 554, 559, 572, 585). He had no problems driving and testified that he drove himself to the hearing. (AR 16, 30-31, 240). He also testified that he did chores around the house by loading and unloading the dishwasher and folding towels. (AR 16, 41). He would go to the grocery store with his sister-in-law and push the shopping cart. (AR 16-17, 41-42). In his Function Report, Mr. Sheets said that he mowed the yard for about two hours once a week. (AR 239). He also said that he did the dishes and the laundry and went to church from time to time. (AR 17, 239, 241).

Mr. Sheets states that he need not be bedridden to prove disability, but the ALJ did not impose such an evidentiary standard on him. (Doc. 8 at 10). Mr. Sheets also claims that the fact that he performed some activities does not necessarily mean that he could work full-time. *Id.* at 10-11. But that is not what the ALJ found. The ALJ simply concluded that Mr. Sheets' activities

8

were inconsistent with his allegations of disabling symptoms. (AR 16). The ALJ was entitled to make such a finding. *See Clevenger v. Soc. Sec. Admin.*, 567 F.3d 971, 976 (8th Cir. 2009) ("Our cases admittedly send mixed signals about the significance of a claimant's daily activities in evaluating claims of disabling pain, but Clevenger did report that she engaged in an array of such activities . . . and it was not unreasonable . . . for the ALJ to rely on this evidence to infer that Clevenger's assertion of disabling pain was not entirely credible.").

Mr. Sheets' main argument is that the ALJ "failed to point to some medical evidence" to support the RFC finding. (Doc. 8 at 6). An ALJ is not required to list each limitation of the RFC followed by the specific evidence that supports it. *See* generally SSR 96-8p, 1996 WL 374184 (July 2, 1996). Instead, the ALJ is required to determine the RFC "based on all of the relevant evidence." *See McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). The ALJ did that here, fully discussing the medical evidence in determining Mr. Sheets' RFC. (AR 16-17).

As Mr. Sheets concedes (Doc. 8 at 8), a medical opinion is not required to support an RFC finding, and the ALJ may instead rely on the treatment records. *See Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) ("In the absence of medical opinion evidence, 'medical records prepared by the most relevant treating physicians [can] provide affirmative medical evidence supporting the ALJ's [RFC] findings.'") (quoting *Johnson v. Astrue*, 628 F.3d 991, 995 (8th Cir. 2011)). Mr. Sheets argues that there were no treatment notes or objective findings on which the ALJ could rely, but that is not the case. (Doc. 8 at 8-9). Mr. Sheets' objective testing and examination findings, his routine treatment, and his successful ankle and wrist surgeries are ample medical evidence in support of the RFC of a reduced range of light work. The ALJ properly found that Mr. Sheets could perform work existing in significant numbers in the national economy and, therefore, was not disabled. (AR 18-19). That determination is supported by substantial evidence and should be affirmed.

## IV. CONCLUSION

For the reasons as set forth herein, the Court finds the Commissioner's determination that Mr. Sheets is not disabled to be supported by substantial evidence on the record as a whole, and is affirmed. Judgment shall be entered in favor of Defendant and against Plaintiff.

Accordingly, IT IS, THEREFORE, ORDERED that the decision of the Commissioner is affirmed as set forth herein.

Dated this 13th day of December, 2018, at Jefferson City, Missouri.

WILLIE J. EPPS, JR.
United States Magistrate Judge